# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARIO REGINALD ROGERS, | ) | |
| | ) | |
| Petitioner, pro se, | ) | **MEMORANDUM OPINION** |
| | ) | **AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | 1:08CV881 |
| | ) | 1:06CR120-1 |
| Respondent. | ) | |

Petitioner Mario Reginald Rogers, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket no 41).[1] Petitioner was originally indicted on one count of conspiracy to distribute cocaine base, two counts of distribution of cocaine base, one count of possession with intent to distribute cocaine base, and one count of possession of a firearm after a felony conviction (docket no. 1). Petitioner pled guilty to the conspiracy and firearm charges (docket nos. 21, 22).

Three months after his guilty plea, Petitioner filed a motion to withdraw that plea (docket no. 24). About two weeks after that motion was denied, Petitioner's counsel withdrew and new counsel was appointed. Petitioner's new attorney filed a second motion to withdraw the guilty plea (docket no. 27). That motion was also denied. Petitioner was subsequently sentenced to 262-months imprisonment (docket no. 30).

---

[1] This and all further cites to the record are to the criminal case.

Petitioner did pursue a direct appeal, but his conviction and sentence were affirmed, as were the denials of his motions to withdraw his guilty plea (docket nos. 38, 39). He then filed his current motion under Section 2255. Respondent filed a response (docket no. 44), Petitioner filed a reply (docket no. 46), Respondent filed a surreply (docket no. 51) addressing points raised for the first time in Petitioner's reply brief, Petitioner filed a reply to the surreply (docket no. 55), and Petitioner's Section 2255 motion was sent to the court for a decision. Be that as it may, Petitioner also filed a motion to supplement his motion to add a recently discovered claim (docket no. 54). That motion was granted and a new cycle of briefing began. Respondent filed a response to the new claim (docket no. 63), and Petitioner has filed a reply (docket no. 64). Petitioner's Section 2255 motion, as supplemented, is again before the court for a decision.

### PETITIONER'S CLAIMS

Petitioner raises six claims for relief in his Section 2255 motion and supporting memorandum. He first claims that his attorney provided ineffective assistance of counsel by advising him to plead guilty when the government lacked the evidence necessary to prove the charges against him beyond a reasonable doubt. He follows that by alleging that counsel allowed him to enter an involuntary plea because counsel did not see that the written plea agreement included a promise made by the government that Petitioner would be debriefed in an effort to gain a substantial

assistance reduction. Petitioner's third claim is that his attorney did not see that the government kept that promise.

Petitioner next asserts that his attorney was incompetent in arguing his motion to withdraw his guilty plea.[2] Petitioner finishes his claims with two related claims concerning the issuance of warrants in the case. He claims that counsel was ineffective because he did not investigate to discover that a search warrant was never issued for the residence where the evidence against him was located. He also raises a substantive claim alleging that no warrant was ever issued.

Petitioner's supplement raises only a single additional claim for relief. He argues that the Assistant United States Attorney who prosecuted his case committed prosecutorial misconduct because he was not a licensed attorney at the time he prosecuted Petitioner's case. He also appears to contend that the fact that the prosecutor was not properly licensed invalidates his plea agreement and guilty plea.

## DISCUSSION

### Claim One

Turning to Petitioner's first claim of ineffective assistance of counsel, a petitioner alleging ineffective assistance must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S.

---

[2] It seems that Petitioner is referring only to his first attorney and first motion to withdraw his plea.

668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing, a habeas petitioner must come forward with some evidence that the claim might have merit), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985). The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)(citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007).

Petitioner alleges that his attorney provided ineffective assistance of counsel by advising him to plead guilty when the evidence against him would not have supported a conviction. This allegation is not supported in light of the record before the court. According to the factual basis in the case, Petitioner was part of a conspiracy to distribute cocaine base in Kannapolis and Cabarrus County, North Carolina, between July 2005 and March 3, 2006. He was responsible for distributing

between 50 and 150 grams of cocaine base during that time.  On December 20, 2005, local officers searched a residence at 908 Oregon Avenue in Kannapolis, North Carolina.  In one of the bedrooms they found documents belonging to Petitioner, a Rossi .44 Magnum handgun, 37 grams of cocaine base, digital scales, and $200 in cash.  Further, Petitioner was a convicted felon who was not allowed to possess firearms (docket no. 22).

The Presentence Report (PSR) adds further facts.  Desmond Arkeem Williams, who was also facing federal drug charges, made statements that Petitioner was his main supplier of cocaine base from July 2005 until November 2005.  During that time, he made 40 purchases of cocaine base from Petitioner totaling 280 grams. One or two unidentified confidential informants also stated that they bought small amounts of cocaine base from Petitioner at the 908 Oregon Avenue address on October 28 and November 29, 2005 under the direction of law enforcement.  But for the limitation on the amount of cocaine base in the plea agreement and factual basis, Petitioner would have been held accountable for 317.7 grams of cocaine base (PSR ¶¶ 6-9, 12).

Petitioner states that all of these facts could have been contested.  He claims to have told counsel that he had no knowledge of the gun or the drugs found at 908 Oregon Avenue, that he was not even at that residence when the confidential informants bought drugs in October and November 2005, that he had moved out of the residence months before, that the residence was occupied by Latisha Young and

a male companion, and that he never sold drugs to Desmond Williams. He claims to have demonstrated to counsel that he did not live at 908 Oregon Avenue and that Young claimed the firearm.

Petitioner's attorney does not directly state whether Petitioner told him these things or not. He does say, however, that he reviewed the government's file and believed that the evidence against Petitioner was strong. He believed that Petitioner would be convicted at trial, which would have been disastrous. Based on Petitioner's criminal record and two Informations of Prior Conviction that had been filed by the government, Petitioner, who was 25 years old at the time, would have faced a mandatory sentence of life in prison without the possibility of parole. His attorney advised him to plead guilty, to cooperate by being debriefed by law enforcement officials, and to work toward a substantial assistance reduction (docket no. 44, ex. 3).

Viewing counsel's advice in context, to be sure it was not ineffective assistance of counsel for him to advise Petitioner to plead guilty. Whatever Petitioner's denials of the allegations against him, there was strong evidence indicating that he was guilty of the drug conspiracy charge. That charge alone would have carried a life sentence. The government had multiple witnesses willing to testify that Petitioner had sold them cocaine base. Also, his possessions were found in the bedroom with the gun, drugs, and items associated with drug dealing. The witnesses and circumstantial evidence, if not countered, would have been more than

sufficient to convict Petitioner, particularly on the conspiracy charge which carried the life sentence. Petitioner denies that he sold the drugs as alleged by the witnesses or that he controlled the bedroom, but has not stated how he would have placed these denials into evidence at trial. His taking the stand would have been extremely problematic due to his lack of any significant employment history and his extensive criminal history, which included at least eight adult felony cocaine convictions acquired between the ages of fourteen and twenty-three (PSR ¶¶ 26-40, 67). He does not proffer any potential witnesses on his behalf other than, possibly, Latisha Young. She has submitted an affidavit, which states in its entirety: "To whom it may concern, I Latisha Young told the Detective that the drugs belong to me & someone else which was Kimbrell Burns" (docket no. 47). It is not entirely clear, but the affidavit is apparently referring to the cocaine base found during the search at 908 Oregon Ave. Even if Young had testified to this fact and managed to add enough detail to make her testimony convincing, it would still not have countered the testimony of the witnesses as to the other sales at other times. The conspiracy conviction and the life sentence it carried would not have been affected. A reasonable defendant would have pled guilty rather than proceeding to trial in these circumstances. Counsel's advice remains entirely reasonable under the circumstances, and Petitioner cannot show that he was prejudiced by the advice. His first claim for relief should be denied.

**Claim Two**

Petitioner's second claim for relief is that his attorney provided ineffective assistance of counsel by allowing him to enter an involuntary plea agreement. He claims that it was involuntary because his attorney failed to see that the written plea agreement included the government's promise to debrief Petitioner as part of a possible substantial assistance reduction. This claim easily fails. It is true that the written plea agreement does not contain such a promise. Even assuming purely for the sake of argument that Petitioner could show that the attorney erred by not including the promise in the plea agreement, however, Petitioner can show no prejudice. There is no question that Petitioner was not debriefed; however, this was not due to a refusal by the government to debrief Petitioner. As will be discussed further below, the debriefing did not occur because of the actions of Petitioner and/or his attorney. The fact that the promise was not included in the written plea agreement did not prejudice Petitioner or somehow render the agreement involuntary or nugatory.

Petitioner also argues that the promise to debrief him overbore his strong desire to go to trial, thereby rendering his guilty plea involuntary. He contends that his attorney knew this and provided ineffective assistance of counsel by allowing him to enter an involuntary plea. This argument is meritless. All that Petitioner describes is a strategic choice of the type that routinely occurs in criminal cases. Defendants constantly make difficult choices between attempting to seek acquittal at trial in the

face of strong evidence and accepting a plea bargain that offers a lower sentence than they will face if they lose at trial. Petitioner is no different. His second claim for relief should be denied.

### Claim Three

Petitioner's third claim for relief is that his attorney did not see that the government lived up to its promise to have Petitioner debriefed. Both Petitioner and his former attorney agree that it was anticipated that he would be debriefed by law enforcement after pleading guilty. Petitioner hoped for, and his attorney felt he had an excellent chance at receiving, a reduction in his sentence as an eventual result of the debriefing. Their renditions as to why that briefing did not occur differ only slightly.

Petitioner's former attorney states in his affidavit supporting Respondent's response brief that a meeting with law enforcement officers was set up for July 7, 2006, to allow for the debriefing (docket no. 44, ex. 3).[3] Nevertheless, upon arriving at the Asheboro Jail where Petitioner had been housed, his attorney discovered that Petitioner was in transit to the Orange County Jail. He called the officers and canceled the meeting with the intention of rescheduling it. At an unidentified later time, detectives did try to meet with Petitioner in the Orange County Jail; however, Petitioner refused to speak with them, instead insisting that he wanted to go to trial.

---

[3] In a later affidavit he states that, upon reviewing his notes, the failed briefing actually occurred on August 18, 2006. This makes no difference in the case.

His attorney describes this as a "change of heart" that prevented the debriefing from occurring.

Petitioner sets out a somewhat different set of facts in an affidavit supporting his reply brief (docket no. 46, ex. 1). Petitioner states that he not only decided to plead guilty based on the promise to be debriefed, but that he did so after being assured that he would receive immunity from prosecution for any of the information he revealed during the debriefing. He agrees that the first attempted debriefing did not occur because he was being transferred; however, he alleges that his later refusal to be debriefed at the Orange County Jail was not a simple change of heart. Instead, he claims that his attorney forgot to bring the paperwork conferring immunity for the information he was about to give. He then refused to talk to the detectives without the appropriate paperwork being signed and in place. He claims that he decided to attempt to withdraw his guilty plea and proceed to trial only when sentencing grew near and his attorney still had not arranged another meeting with detectives.

Finally, Petitioner's attorney submitted a second affidavit in conjunction with Respondent's surreply brief (docket no. 51, ex. 1). He states there that Petitioner first expressed interest in withdrawing his guilty plea in late August 2006. Although he advised Petitioner that such a motion was unlikely to succeed, Petitioner persisted and the motion was filed. As predicted by counsel, it was denied. The second debriefing was scheduled for September 26, 2006. It was at this debriefing

that Petitioner stated that he wanted an immunity agreement in writing prior to any debriefing. Counsel responded that they had an understanding or oral agreement in place so that nothing he said in the debriefing would be used against him. The attorney advised Petitioner to proceed with the debriefing and allow him to secure the written immunity agreement after the debriefing. He states that Petitioner refused to be debriefed. He did so hoping that he could still have his guilty plea stricken and proceed to trial without having the information from the debriefing used against him. Counsel advised him that he could not go to trial and cooperate at the same time. Petitioner refused to be debriefed and asked counsel to withdraw. Counsel filed a motion to withdraw the next day, which was subsequently granted.

In significant areas, the statements of Petitioner and his former attorney are in agreement. The initial debriefing, which was scheduled prior to Petitioner's first motion to withdraw his guilty plea, failed to occur because Petitioner was transferred to Orange County Jail on the day he was supposed to be debriefed. The second debriefing did not occur, at least in part, because there was no written immunity agreement in place. Nevertheless, they differ as to the timing of the second attempted debriefing in relation to Petitioner's first motion to withdraw his plea. Petitioner remembers the second attempt as occurring prior to his first motion to withdraw his plea, while his attorney's notes reflect that it happened after the first motion to withdraw the plea had been filed and decided.

Fortunately, the transcript of the hearing on Petitioner's first motion to withdraw his plea sheds dispositive light on the matter. In that hearing, both Petitioner's attorney and the prosecutor discussed the progression of the case. Petitioner's attorney stated that Petitioner had agreed to plead guilty while expecting to be debriefed shortly after the plea; however, one of the officers working the case had gotten injured. When another officer took his place, the failed meeting in Asheboro occurred. Eventually, the PSR was produced and the debriefing still had not occurred. Petitioner then filed the motion to withdraw his plea (docket no. 35 at 2-3). The prosecutor then spoke at the motion hearing and agreed that it was unfortunate, but that circumstances had prevented the debriefing to that point. He stated that he still hoped that Petitioner could be debriefed and receive a reduced sentence (*id.* at 3-5). Petitioner was given a chance to speak. He did not state that there had been two attempted debriefings and did not complain about any lack of a written immunity agreement. Instead, he stated simply that: "From the start, Your Honor, I never wanted to take this plea. Me being debriefed or whatnot has nothing to do with it. I wanted to go to trial" (*id.* at 5).

The transcript helps to confirm that the second failed debriefing, did not, consistent with the attorney's contemporaneous notes, occur until after the first motion to withdraw Petitioner's plea had already been decided. Had the dispute over the lack of immunity agreement already occurred, it would have obviously been mentioned by one of the attorneys or Petitioner at the motion hearing. Instead, only

the first attempt was reported and both sides were hopeful that a second meeting could be arranged.

Unfortunately for Petitioner, this means that he cannot prevail on his third claim for relief. He faults his attorney for not holding the government to its promise to debrief him. Nevertheless, everyone agrees that the first debriefing failed to occur because Petitioner was moved. After that time, he sought to withdraw his plea. He stated at his motion hearing that the lack of debriefing had nothing to do with it. Nevertheless, his attorney did make a further attempt to have him debriefed, only to have Petitioner refuse to follow through without a written immunity agreement. Petitioner did this despite being advised that he could and should proceed based on an oral agreement of immunity. Petitioner chose to ignore this advice and asked his attorney to withdraw. This was his decision, not his attorney's. Because the attorney then followed Petitioner's wishes and moved to withdraw, he could not have made any further attempts to have Petitioner be debriefed. In the end, it was Petitioner's decision not to have the debriefing occur. He ignored his attorney's advice and therefore cannot blame his initial attorney because his own alternate strategy of getting a new attorney and making a further attempt to withdraw his plea did not succeed. His third claim for relief should be dismissed.

## Claim Four

Petitioner's fourth claim for relief is that his attorney was ineffective for failing to properly argue his first motion to withdraw his guilty plea. He complains that

-13-

counsel should have argued in support of the motion that the guilty plea was involuntary because it was induced by the promise of debriefing and that Petitioner was legally innocent because the government did not have evidence to prove the charges against him. For the reasons discussed previously, these allegations fail. Petitioner's decision to plead guilty, while perhaps not an easy one, was in no way involuntary. Nor was it induced by a promise of debriefing that was not kept due to the actions of anyone other than Petitioner. His attorney and the prosecution still hoped that the promise would be kept at the time the first motion to withdraw the plea was decided. Further, while Petitioner may have made proclamations of innocence to his attorney, this is very different from the government lacking evidence to prove the charges. The government actually had very strong evidence in the form of witnesses who would testify that Petitioner sold cocaine base to them on multiple occasions. Finally, after Petitioner's first attorney withdrew, his second attorney filed another motion to withdraw the guilty plea which did assert his innocence (docket no. 27). He lost that motion and the Fourth Circuit found on direct appeal that Petitioner had not credibly asserted his innocence (docket no. 38). There is nothing in the record to indicate that the outcome would have changed if the first attorney had more forcefully argued Petitioner's claims of innocence. This claim should be denied because Petitioner cannot demonstrate any prejudice.

## Claims Five and Six

Petitioner's final two claims allege that his attorney provided him with ineffective assistance of counsel by not discovering that no warrant was ever issued for 908 Oregon Avenue and that Petitioner's due process rights were violated by the false statements of a deputy that a warrant had been issued. Petitioner has not explained the basis for his allegation that no warrant was issued, neither has he provided any actual evidence. His last two claims in his original Section 2255 motion are entirely conclusory and should be denied as such.

## Supplemental Claim

Petitioner has raised a single claim for relief in his supplement to his petition. In that claim, he states that he recently learned that the Assistant United States Attorney who prosecuted him was not a licensed attorney and had not been properly licensed since 2003. He contends that the prosecutor's unlicensed practice of law in his case constitutes contempt of court and prosecutorial misconduct. He adds that it supports his arguments that his plea agreement was breached, that his debriefing was not properly handled, and that terms to that agreement existed outside of the written agreement that was filed. He also contends that the prosecutor's actions infected the entire proceeding with unfairness and that his due process rights were violated.

Petitioner's claims regarding the alleged breach of his plea agreement, the existence of terms outside that agreement, and his debriefing have already been

addressed above. The analysis of those claims is not affected by the fact that the prosecutor in the case was suspended from the practice of law.[4] Of greater concern are Petitioner's claims that the prosecutor's practice of law while his license was suspended constituted prosecutorial misconduct or a violation of Petitioner's due process rights.

Although the practice of law by an unlicensed or improperly licensed prosecutor is an unusual situation, it is not unique or unprecedented. In fact, it has occurred on several occasions in courts across the country. Most courts facing the dilemma have ruled that a defendant does not have a constitutional right to a properly licensed prosecutor, that the prosecution of a case by an unlicensed or improperly licensed prosecutor does not automatically violate a defendant's rights, and/or that a defendant must show some sort of prejudice in order to challenge his conviction. *Hamilton v. Roehrich*, 628 F. Supp. 2d 1033, 1050-54 (D. Minn. 2009); *Munoz v. Keane*, 777 F. Supp. 282, 284-87 (S.D.N.Y. 1991), *aff'd sub nom. Linares v. Senkowski*, 964 F.2d 1295 (2$^d$ Cir. 1992); *People v. Carter*, 77 N.Y.2d 95, 106-07, 566 N.E.2d 119, 123-24 (1990); *Ali v. Minnesota*, Civil No. 09-1389, 2010 WL 145280, at *5 (D. Minn. Jan. 8, 2010 ). At least one court has held that a prosecution pursued by a prosecutor without a proper license is still valid because,

---

[4] Respondent acknowledges that the North Carolina State Bar filed a complaint against the AUSA alleging that his license was suspended as of November 5, 2003, for failure to satisfy North Carolina's Continuing Legal Education requirements. The AUSA knew this, but continued to prosecute cases anyway until March of 2009 (docket no. 63 at 6 n.1).

although not qualified for her job as a prosecutor, she was nevertheless given the job by the government. This made her a "*de facto* officer" whose acts on behalf of the government were valid. *Parker v. United States,* Nos. 4:98CR00236GH, 4:03CV00058GH, 2006 WL 2597770, at *13-15 (E.D. Ark. Sept. 8, 2006); *United States v. Deaton*, Nos. 4:99CR87GH, 4:04CV2252GH, 2005 WL 1922877, at *3-5 (E.D. Ark. Aug. 9, 2005). There is a decision from Illinois in which a state court held that prosecutions by an unlicensed prosecutor are *per se* invalid. *People v. Dunson*, 316 Ill. App. 3d 760, 763-70, 737 N.E.2d 699, 702-06 (2000). Nevertheless, the court in *Dunson* relied solely on state, not federal, law and declined to decide whether or not a due process violation had occurred. No case of which the court is aware has held that there is a federal constitutional right to a properly licensed prosecutor or that prosecution by an unlicensed prosecutor invalidates a conviction or plea agreement based on any federal right in the absence of a showing of prejudice.

This court agrees with the cases concluding that there is no constitutional right to a properly licensed prosecutor and that a defendant or petitioner must show prejudice in order to raise a claim based on a prosecutor's licensing deficiencies. Petitioner points to no such prejudice in the case at bar and none is apparent. Although Petitioner may be unhappy with the actions of the prosecutor in scheduling or not scheduling his debriefing, these actions have nothing to do with the prosecutor's licensing status. They also failed to prejudice Petitioner for the reasons

already set out.[5] Petitioner's supplemental claim related to the prosecutor's licensing status should also be denied.

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (docket no. 41), as supplemented (docket no. 54), be **DENIED** and that Judgment be entered dismissing this action.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, N.C.
July 27, 2010

---

[5] Indeed, it is somewhat difficult to envision a situation where an unlicensed prosecutor could engage in actions that prejudiced a defendant, but that would not establish a claim for relief independent from the licensing problem. For instance, a prejudicial violation of a defendant's discovery rights would entitled him to relief whether or not the prosecutor is licensed. The existence of a claim based on prejudice due to a lack of prosecutorial licensing may be merely theoretical.

-18-